**UNITED STATES of America**

**v.**

**Thomas HEYER.**

**No. 5:08–HC–2183–BO.**

United States District Court,
E.D. North Carolina,
Western Division.

July 8, 2012.

G. Norman Acker, III, R.A. Renfer, Jr., Matthew Lee Fesak, U.S. Attorney's Office, Raleigh, NC, Michael D. Bredenberg, Federal Medical Center, Michael E. Lockridge, Federal Bureau of Prisons, Legal Center, Butner, NC, for United States of America.

Debra C. Graves, Katherine E. Shea, Federal Public Defender, Raleigh, NC, for Thomas Heyer.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

TERRENCE WILLIAM BOYLE, District Judge.

Petitioner, the United States of America ("the government") instituted this civil action on December 18, 2008, seeking to commit Thomas Heyer as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act") [DE 1]. 18 U.S.C. § 4248. The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Mr. Heyer and issued a preliminary determination that he is sexually dangerous within the meaning of the Act [DE 1]. A certificate filed under the Act stays a respondent's release from federal custody pending a hearing to determine whether he qualifies for commitment as a sexually dangerous person. The government's petition was filed less than two months prior to Mr. Heyer's scheduled date of release from BOP custody on January 1, 2009 [DE 1].

### BACKGROUND

An evidentiary hearing was held before this Court on May 30 and 31, 2012 pursuant to 18 U.S.C. § 4247(d) [DE 77, 78]. On June 1, the Court directed the parties to file proposed findings of fact and conclusions of law. After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure:

The Court adopts and incorporates as fully set forth herein Respondent's findings of fact as set forth at pages 1 through 3 of docket entry 80. Mr. Heyer concedes that he has engaged in or attempted to engage in sexually violent conduct or child molestation in the past [DE 80 at 5]. The Court concludes that the government has met its burden to demonstrate by clear and convincing evidence that Mr. Heyer suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty refraining

from sexually violent conduct or child molestation if released. Therefore, Mr. Heyer is committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4248.

## DISCUSSION

To obtain a commitment order against Mr. Heyer, the government is required to establish three distinct facts by clear and convincing evidence: that Mr. Heyer (1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5); (2) "currently suffers from a serious mental illness, abnormality, or disorder"; and (3) as a result of the illness, abnormality, or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(a)(6). *See United States v. Comstock*, 627 F.3d 513, 515–16 (4th Cir.2010). "[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." *United States v. Hall*, 664 F.3d 456, 461 (4th Cir.2012) (citing *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir.2001)) (internal quotation marks, citations, and alterations omitted); *see also Addington v. Texas*, 441 U.S. 418, 423–24, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (noting that the "clear and convincing" standard of proof is an "intermediate standard" that falls between a "mere preponderance of the evidence" and proof "beyond a reasonable doubt").

### 1. *Whether Respondent has engaged in or attempted to engage in sexually violent conduct or child molestation.*

The Court finds that the government has proven by clear and convincing evidence that Mr. Heyer has engaged in sexually violent conduct or child molestation in the past. Mr. Heyer has conceded that this element is satisfied [DE 80 at 5].

### 2. *Whether Respondent currently suffers from a serious mental illness, abnormality, or disorder.*

█ Dr. Davis diagnosed Mr. Heyer with pedophilia, attracted to males, nonexclusive type; alcohol abuse; cannabis abuse; and antisocial personality disorder. Pet'r Ex. 3 at 973. Dr. Ross diagnosed Mr. Heyer with pedophilia, sexually attracted to males, nonexclusive type; alcohol abuse; and antisocial personality disorder. Pet'r Ex. 5 at 938. Dr. Lytton acknowledges that Mr. Heyer may have met the criteria for a pedophilia diagnosis in the past, but opines that "there is not sufficient evidence to suggest that he currently meets the diagnostic criteria for pedophilia." Resp't Ex, 2 at 8.

The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM–IV–TR") requires that the following criteria be met to support a diagnosis of pedophilia: (1) over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children; (2) the person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and (3) the person is at least age 16 years and at least 5 years older than the child or children. DSM–IV–TR at 572.

Dr. Davis finds support for this diagnosis because Mr. Heyer has demonstrated a history of sexual offending against prepubescent children, he has possessed child pornography, he has demonstrated sexual arousal to prepubescent males during a penile plethysmograph assessment in 2006, and he has acknowledged a sexual attraction to male children. Pet'r Ex. 3 at 973–

74. Dr. Ross cites to Mr. Heyer's self-report of engaging in pedophilic behaviors for a period of at least 13 years, a penile plethysmograph that showed the greatest arousal response to males ages 6 to 11, and Mr. Heyer's child pornography conviction. Pet'r Ex. 5 at 938.

Dr. Lytton contests the current validity of the diagnosis because (1) the penile plethysmograph tests produced results that the examiners described as clinically insignificant, (2) "Mr. Heyer's sexual offending pattern appears to have de-escalated as evidenced by his last contact offense having occurred in 1993," and (3) "Mr. Heyer's current sexual interests suggest that he is interested in consenting adult homosexual activities, not forced and not involving prepubescent individuals." Resp't Ex. 2 at 8.

The Court credits the testimony of Dr. Davis and Dr. Ross, and finds that Dr. Lytton has not provided a persuasive justification as to why Mr. Heyer no longer satisfies the relevant diagnostic criteria. In the absence of evidence that Mr. Heyer's pedophilia has abated or dissipated, the Court finds that the government has met its burden by clear and convincing evidence that Mr. Heyer currently suffers from pedophilia.[1]

3. *Whether, as a result of the illness, abnormality, or disorder, the Respondent would have serious difficulty in refraining from sexually violent conduct or child molestation if released.*

 The government has also met its burden to establish, by clear and convincing evidence, that Mr. Heyer will have serious difficulty in refraining from sexually violent conduct if released. As noted by the Fourth Circuit in *United States v. Hall,*

> [t]he 'serious difficulty' prong of § 4248's certification proceeding refers to the degree of the person's "volitional impairment," which impacts the person's ability to refrain from acting upon his deviant sexual interests. *Kansas v. Hendricks,* 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (noting that statutory requirements that couple proof of dangerousness with proof of a mental illness or abnormality "serve to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); *id.* at 357, 117 S.Ct. 2072 (noting that civil commitment statutes may "provide[ ] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety ... provided the confinement takes place pursuant to proper procedures and evidentiary standards") (internal citations omitted); *see also Kansas v. Crane,* 534 U.S. 407, 414, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (noting that "our cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior.")

664 F.3d at 463.

Each of the testifying experts relied, to a greater or lesser degree, on actuarial instruments. These instruments include the Static–99R, the MnSOST–R[2], and the

---

1. Although Drs. Davis and Ross diagnosed Mr. Heyer with alcohol abuse and antisocial personality disorder, and Dr. Davis also diagnosed Mr. Heyer with cannabis abuse, the Court does not express an opinion on whether the diagnostic criteria for these conditions are met in Mr. Heyer's case or on whether these diagnoses could ever constitute serious mental disorders under the Act, given that Mr. Heyer's pedophilia is sufficient to satisfy the government's burden on the second element for commitment.

2. The MnSOST–R has recently been repudiated by its developers, so the Court does not

MATS–1. It is important to note that these actuarial risk assessments reflect relative risk among various large groups of individuals and do not provide specific risks or probabilities for any individual. On the Static–99R, Drs. Davis and Lytton scored Mr. Heyer as a 9 and Dr. Ross scored Mr. Heyer as a 10. On the MATS–1, Dr. Lytton scored Mr. Heyer as a 7.

In evaluating Mr. Heyer's dynamic risk factors, Dr. Davis noted that Mr. Heyer has demonstrated intimacy deficits and has a tendency "to act on his own self-interest with little consideration for others." Pet'r Ex, 3 at 981. Dr. Davis also described Mr. Heyer's poor sexual self-regulation, poor cooperation with supervision while in the community, and impulsive behavior. Pet'r Ex. 3 at 981–82. He was particularly troubled by Mr. Heyer's "demonstrated capacity for violence as a part of sexual offending." Pet'r Ex. 3 at 987. Dr. Ross noted that Mr. Heyer has "demonstrated continued sexual interest in children, as evidenced by the items found in his cell and rejected from his incoming mail." Pet'r Ex. 5 at 939. She also cited to Mr. Heyer's impulsivity, sexual preoccupation, and lack of cooperation with supervision. Pet'r Ex. 5 at 942. Dr. Lytton noted that Mr. Heyer has not engaged in sexual or violent misconduct while incarcerated and that his risk of recidivism will continue to decline as he advances in age. Resp't Ex. 2 at 11. She also found relevant that Mr. Heyer has not minimized his offending, does not have negative attitudes toward intervention, does not have attitudes supporting his past offending, and has realistic future plans. Resp't Ex. 2 at 11.

Viewed in light of Mr. Heyer's individual circumstances and his dynamic risk factors, the Court finds his actuarial assessment results are consistent with his ongoing serious difficulty in refraining from sexually violent conduct or child molesta-tion. The Court credits the testimony and report of Dr. Davis, who focused on Mr. Heyer's impulsivity, poor sexual self-regulation, and poor compliance with supervision when in the community. Coupled with evidence of Mr. Heyer's ongoing sexual interest in children, as noted by Dr. Ross, the Court holds that the government has met its burden to establish by clear and convincing evidence that Mr. Heyer, if released today, would have serious difficulty in refraining from sexually violent conduct or child molestation.

Mr. Heyer was born prelingually and profoundly deaf. Resp't Ex. 4 at 27. Because of Mr. Heyer's unique circumstances and his severe deficits in linguistic functioning, Dr. Jean Frances Andrews, Director of Graduate Programs in Deaf Education at Lamar University, testified in regard to Mr. Heyer's linguistic competence. Dr. Andrews opined in her report that Mr. Heyer's reading level was at grade level 2.8 and that he lacks the advanced ASL skills required for interaction beyond social settings. Resp't Ex. 4 at 25–26. The Court credits Dr. Andrews' testimony that Mr. Heyer has severe deficits in linguistic functioning. For that reason, the Court does not rely in its analysis on Mr. Heyer's comprehension of the book *Slave Sons,* depicting sadistic sexual acts between a father and son, as Dr. Andrews testified that the book was written at grade level 7.8 and was well beyond Mr. Heyer's understanding. The Court has also taken into account the fact that Mr. Heyer's "statements" in clinical interviews are actually translations provided by interpreters and that some of the testifying psychologists have not had experience in evaluating deaf individuals [DE 80 at 11, 16]. Despite these qualifiers, the Court remains convinced that Mr. Heyer currently suffers from pedophilia, and that he

rely on Mr. Heyer's scores on this actuarial assessment.

would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

█ Each of the testifying psychologists in this case have noted that Mr. Heyer has not yet received meaningful sex offender treatment while at Butner. However, this failure cannot be attributed to Mr. Heyer. Rather, as noted by Dr. Ross, Mr. Heyer expressed interest in sex offender treatment programs in the BOP in May 2008. However, according to the Pre–Certification Evaluation Report, "due to limitations of participating in programming related to his hearing impairment, he was deemed unqualified." Pet'r Ex. 5 at 929. Because civil commitment under the Act has been held by the Fourth Circuit not to be punitive in nature; *see United States v. Comstock (Comstock II)*, 627 F.3d 513, 524 (4th Cir.2010); the Court holds that the BOP must make reasonable accommodations to allow Mr. Heyer to participate in its sex offender treatment program. In other words, it must provide an interpreter through whom Mr. Heyer can meaningfully participate in the treatment program. Without such accommodations, Mr. Heyer's civil commitment would fail to meet the Act's mandate that the Attorney General assume responsibility for his "custody, care and treatment." *See* 18 U.S.C. § 4248; *Comstock II*, 627 F.3d at 516. Dr. Ross noted that Mr. Heyer requires successful treatment intervention in order that he may "internalize[ ] relapse prevention strategies." Pet'r Ex. 5 at 939. To that end, the BOP is ordered to provide an appropriate interpreter for Mr. Heyer. At any and all future discharge hearing(s) in this case pursuant to 18 U.S.C. §§ 4247(h) or 4248(e), the government must demonstrate that Mr. Heyer has been provided with appropriate accommodations to allow him to meaningfully participate in treatment.

*CONCLUSION*

For the foregoing reasons, judgment shall be entered in favor of Petitioner, the United States of America, and against the Respondent, Thomas Heyer. Mr. Heyer shall be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4248. The BOP is ORDERED to provide an appropriate interpreter through whom Mr. Heyer can meaningfully participate in sex offender treatment. At any and all future discharge hearing(s) in this case pursuant to 18 U.S.C. §§ 4247(h) or 4248(e), the government must demonstrate that Mr. Heyer has been provided with appropriate accommodations to allow him to meaningfully participate in treatment.

SO ORDERED.